```
09:57:36   1

01:12:40                IN THE UNITED STATES DISTRICT COURT

                          FOR THE DISTRICT OF DELAWARE


           INTUITIVE SURGICAL, INC.,   )
           et al.,                     )
                                       )
                     Plaintiffs,       )
                                       ) C.A. No. 18-1359(MN)
           v.                          )
                                       )
           AURIS HEALTH, INC.,         )
                                       )
                     Defendant.        )


                           Thursday, April 4, 2019
                           9:58 a.m.
                           Teleconference


                           844 King Street
                           Wilmington, Delaware



           BEFORE:  THE HONORABLE MARYELLEN NOREIKA
                    United States District Court Magistrate Judge




           APPEARANCES:


                    SHAW KELLER, LLP
                    BY:  KAREN ELIZABETH KELLER, ESQ.

                     -and-

                    DURIE TANGRI
                    BY:  DARALYN J. DURIE, ESQ.
                    BY:  LAURA E. MILLER, ESQ.

                                 Counsel for the Plaintiffs
```

1  APPEARANCES CONTINUED:
2
3
4           RICHARDS LAYTON & FINGER, P.A.
            BY:  KELLY E. FARNAN, ESQ.
5
            -and-
6
            MORRISON FOERSTER
7           BY:  WENDY J. RAY, ESQ.

8                    Counsel for the Defendant

9
10
11
12                          - oOo -

13                   P R O C E E D I N G S

14           (REPORTER'S NOTE:  The following telephone
15  conference was held in chambers, beginning at 9:58 a.m.)

16
17
18
09:58:32 19          THE COURT:  Good morning, counsel.  Who is
09:58:33 20  there, please?
09:58:35 21          MS. KELLER:  Good morning, Your Honor.  It's
09:58:37 22  Karen Keller from Shaw Keller on behalf of the plaintiff.
09:58:39 23  And with me is Daralyn Durie and Laura Miller from Durie
09:58:45 24  Tangri.
09:58:45 25          THE COURT:  Welcome.

```
09:58:46   1                    And for defendant?
09:58:48   2                    MS. DURIE:  Good morning.
09:58:49   3                    THE COURT:  Good morning.
09:58:49   4                    MS. FARNAN:  Good morning, Your Honor.  It's
09:58:51   5    Kelly Farnan from Richards, Layton & Finger for the
09:58:54   6    defendant.  And I'm joined by Wendy Ray from Morrison &
09:58:58   7    Foerster.
09:58:58   8                    MS. RAY:  Good morning, Your Honor.
09:58:59   9                    THE COURT:  Good morning.
09:59:00  10                    Thank you for getting on the phone with me on
09:59:02  11    short notice.  I have read plaintiff's motion for reargument
09:59:07  12    and the response.  And I have gone back and looked at the
09:59:10  13    original proposal that was submitted to me in the form of a
09:59:15  14    proposed scheduling order, and in that submission, the
09:59:18  15    defendants proposed reductions over a period of time to
09:59:23  16    claims and prior art, and plaintiffs offered no reduction,
09:59:28  17    said they weren't in a position to discuss it.
09:59:31  18                    Now, I'm sure you know that a district court has
09:59:36  19    inherent authority to limit the number of patent claims that
09:59:40  20    parties may assert to control the disposition of the cases
09:59:43  21    on its docket with economy, time and effort for itself, for
09:59:48  22    counsel, and for litigants.  And in this district, limiting
09:59:52  23    the number of patent claims that a party may assert as well
09:59:57  24    as the number of terms that it will construe is quite
10:00:01  25    common.  So in getting those submissions, we had eight
```

10:00:07 1  patents with more than 500 claims.  And so obviously we're
10:00:11 2  going to have some limitations imposed if plaintiffs
10:00:14 3  actually expect to be able to try the case.
10:00:16 4           So I went with the objections, or the
10:00:21 5  limitations that were given to me that seemed reasonable,
10:00:24 6  but Intuitive has objected to the limitations and asked for
10:00:28 7  an opportunity to be heard.  So I'm giving you this morning
10:00:33 8  that opportunity.
10:00:34 9           So Intuitive.
10:00:35 10          MS. DURIE:  Thank you, Your Honor.  This is
10:00:38 11 Daralyn Durie from Durie Tangi.  I do appreciate that and,
10:00:41 12 of course, we do recognize that ultimately the case will
10:00:43 13 need to be narrowed for trial and that the Court does have
10:00:47 14 inherent authority to manage that process.
10:00:50 15          And candidly we had expected that we would have
10:00:54 16 some telephonic conference of this nature in which we would
10:00:58 17 be able to ascertain the Court's view with respect to claim
10:01:03 18 narrowing and perhaps arrive at some compromise position
10:01:07 19 which is why we had set forth in our statement our initial
10:01:11 20 view which was that the narrowing was not appropriate at
10:01:13 21 this stage and we very much appreciate the opportunity to be
10:01:17 22 heard on this issue.
10:01:19 23          And I think our concerns are really as follows:
10:01:22 24 Although we recognize that, of course, the Court has the
10:01:24 25 inherent authority to manage the process, there are also

10:01:30 1    some due process concerns with requiring the plaintiffs to
10:01:34 2    eliminate claims prior to having had an opportunity to fully
10:01:39 3    understand the infringement and validity landscape which
10:01:43 4    will bear on the extent to which there are non-duplicative
10:01:47 5    claims at issue.
10:01:48 6              And in some of the other orders that have issued
10:01:52 7    in this court, and I would use as an example Judge Burke's
10:01:57 8    order in the Ethicon case, there was an explicit provision
10:02:01 9    allowing the plaintiffs to add additional claims and/or
10:02:05 10   substitute claims on a showing of good cause if evidence
10:02:08 11   developed and it became clear that there were
10:02:11 12   non-duplicative claims at issue as the Court intended would
10:02:16 13   be appropriate.
10:02:17 14             Here we have eight patents that the Court noted.
10:02:20 15   They're addressed to different features of this very complex
10:02:24 16   robotic surgery system.  And we need a sufficient amount of
10:02:28 17   time I think to be able to understand the infringement and
10:02:31 18   the validity positions of the parties.  And in our view it
10:02:35 19   would be helpful to have the parties' claim construction
10:02:39 20   positions as part of that claim narrowing process.
10:02:42 21             And so understanding now the Court's views with
10:02:46 22   respect to when it would be appropriate in general to have
10:02:51 23   claim narrowing take place, which we understand, we would in
10:02:54 24   view of that understanding propose that we have the same
10:02:59 25   type of safety valve if you will if it becomes clear that

10:03:05 1 the additional claims become required.

10:03:07 2 We think that the number of fifty total claims
10:03:09 3 and no per patent limitations makes sense. The per patent
10:03:14 4 -- the removal of the per patent limitation shouldn't
10:03:17 5 prejudice the defendants in any way. In fact, if the bulk
10:03:21 6 of the claims are limited to a few patents, it would make
10:03:25 7 that easier, if anything, from the defendant's perspective.

10:03:28 8 And we would appreciate having a little bit more
10:03:32 9 time to engage in that process and I think in particular to
10:03:37 10 have it take place after we've had at least some initial
10:03:41 11 exchange of positions with respect to claim construction,
10:03:43 12 which will help me clear the extent to which some of the
10:03:47 13 dependent limitations do or don't provide meaningfully
10:03:52 14 distinctions and will help eliminate the parties' view with
10:03:57 15 respect to infringement.

10:03:58 16 THE COURT: Okay. And for Auris, anything you
10:04:01 17 want to add?

10:04:03 18 MS. FARNAN: Yes, Your Honor, just briefly.
10:04:05 19 This is Kelly Farnan.

10:04:06 20 As Your Honor noted, I think the proposal that
10:04:08 21 we made in the scheduling order was certainly a reasonable
10:04:11 22 proposal. When Intuitive filed this case in August of 2018,
10:04:16 23 they asserted only eight claims in the patent, but they
10:04:19 24 charted all those claims. They had eighty-five pages of
10:04:22 25 claim charts that were attached to the complaint. So our

10:04:25 1 proposal to allow them just before claim construction to
10:04:28 2 narrow to thirty-two claims is sort of a fourfold increase
10:04:32 3 of even what they put in the complaint.
10:04:34 4 And the timing I think, Your Honor, is
10:04:37 5 particularly important here. To have the parties go through
10:04:39 6 as much claim construction as Intuitive proposes really puts
10:04:43 7 an undue burden I think on both the parties and the Court.
10:04:47 8 Under the proposal that Intuitive is now pressing, we would
10:04:50 9 not have any claim narrowing, really, until a month before
10:04:54 10 the claim construction hearing and in the middle of claim
10:04:56 11 construction briefing.
10:04:58 12 On the flip side, we had proposed that that
10:05:01 13 narrowing occur just before the exchange of claim terms and
10:05:06 14 so it would occur on July 5th. And that, Your Honor, I
10:05:11 15 think that's fairly generous to Intuitive because in most of
10:05:14 16 the cases in this district, the initial narrowing happens at
10:05:17 17 the initial infringement contentions. And, in fact, you
10:05:20 18 know, Intuitive is getting more time under our proposal.
10:05:25 19 They will provide their initial infringement contentions,
10:05:27 20 they will have our invalidity contentions, and a month later
10:05:31 21 that's when we had proposed a claim narrowing. And I think
10:05:34 22 that's an important point in the case for the parties to
10:05:37 23 start focusing their experts' efforts and not doing
10:05:40 24 unnecessary work on a lot of claims that will never actually
10:05:43 25 be asserted.

| | | |
|---|---|---|
| 10:05:44 | 1 | I don't think we -- obviously if Your Honor |
| 10:05:47 | 2 | thinks that some adjustment to the number of claims is |
| 10:05:49 | 3 | necessary, you know, I think that may be something |
| 10:05:53 | 4 | different, but the thirty-two claims as I said is sort of |
| 10:05:55 | 5 | fourfold what they have in the complaint, but the timing is |
| 10:05:58 | 6 | particularly important. Waiting as long as Intuitive is |
| 10:06:01 | 7 | asking really is going to eliminate any of the efficiency of |
| 10:06:05 | 8 | the reasonable claim narrowing proposals. |
| 10:06:09 | 9 | THE COURT: And Intuitive, you want the last |
| 10:06:11 | 10 | word? |
| 10:06:11 | 11 | MS. DURIE: The only thing I would observe, Your |
| 10:06:14 | 12 | Honor, is that what we charted in the complaints were |
| 10:06:16 | 13 | exemplary claims from each patent as is standard practice |
| 10:06:21 | 14 | that was not limiting in any way the number of claims that |
| 10:06:25 | 15 | we were asserting. We certainly do understand the concerns |
| 10:06:31 | 16 | and one, you know, sort of compromised proposal and the way |
| 10:06:35 | 17 | to slice it to address those concerns would be to have the |
| 10:06:38 | 18 | claim narrowing take place -- right now the joint claim |
| 10:06:42 | 19 | construction statement is due on August 2nd, the plaintiff's |
| 10:06:46 | 20 | brief is due on August 3rd. They had raised concern with |
| 10:06:51 | 21 | respect to the briefing and I think that is a fair concern. |
| 10:06:54 | 22 | And in view of that we would propose something a week after |
| 10:06:57 | 23 | this JTCC, for example, maybe August 9th, something along |
| 10:07:01 | 24 | those lines for the claim narrowing in order to accommodate |
| 10:07:04 | 25 | that concern. |

10:07:06  1                THE COURT:  Okay.  Just give me a second here.

10:07:39  2                (Discussion off the record.)

10:08:18  3                THE COURT:  One question that we had before I

10:08:24  4    make a decision.  This I think goes mostly to Auris.  Tell

10:08:30  5    me what the benefit is of the per patent limit.  If I agree

10:08:37  6    with you on the total numbers that we're going to get down

10:08:41  7    to, what is the point of the per patent limit, especially in

10:08:44  8    a case like this where some patents have, you know,

10:08:49  9    significantly or substantially fewer claims than others?

10:08:56 10                MS. FARNAN:  Your Honor, I mean, that's not a

10:08:59 11    point that we feel strongly about.  I think it's more

10:09:02 12    important the timing of the narrowing and that the narrowing

10:09:05 13    occur, not necessarily that it be per patent.  So Your Honor

10:09:09 14    said thirty-two claims, but didn't limit per patent, we

10:09:12 15    wouldn't object to that.

10:09:13 16                THE COURT:  Okay.  So this is what I am going to

10:09:19 17    do, and I thank you for the discussion.

10:09:22 18                After hearing from the parties, I am going to

10:09:25 19    agree to modify the scheduling order as follows:  The date

10:09:28 20    in the first paragraph of numbered paragraph 15 will be

10:09:33 21    modified.  Instead of seven days before claim construction

10:09:37 22    terms are exchanged, that limitation of claims down to

10:09:42 23    thirty-two, and whatever that number of prior art is in that

10:09:46 24    paragraph will occur within seven days of the submission of

10:09:50 25    the joint claim chart.  And I will include the thirty-two

10:09:57  1   total claims limitation, but not the per patent limitation.
10:10:02  2              The second paragraph of number 15 will remain
10:10:07  3   the same, though if the parties agree, I will also agree to
10:10:12  4   remove the per patent limitation there.  But the total
10:10:16  5   number of claims will go down to twenty.
10:10:24  6              We cannot, however, have 500 possible claims and
10:10:28  7   unlimited prior art references in the lead up to even those
10:10:31  8   Markman exchanges and the briefing.  So I'm also going to
10:10:38  9   order that in connection with the May 3rd infringement
10:10:41 10   disclosures in paragraph 8(c), plaintiff must narrow its
10:10:46 11   asserted claims to fifty.
10:10:49 12              By May 3rd, you will have had the core technical
10:10:54 13   documents according to the schedule for more than a month
10:10:59 14   and you can narrow the asserted claims down to a more
10:11:02 15   reasonable number, and that I am going to say is fifty.
10:11:05 16              And in the June validity contentions in
10:11:08 17   paragraph 8(d), defendants are going to be limited to
10:11:10 18   eighty-five references.  I think this is fair.  And it's
10:11:13 19   consistent with what other parties have done in other cases
10:11:18 20   in this district, consistent with the Federal Circuit case
10:11:24 21   law.  However, I will have a safety valve such as what
10:11:28 22   plaintiff proposed.  I'm not going to close the door on the
10:11:32 23   possibility that Intuitive can later come back and make a
10:11:35 24   showing of need or good cause that it should be able to add
10:11:38 25   or substitute claims other than the ones that it's chosen at

10:11:42 1   various stages, but I think limiting things as I just said
10:11:46 2   now will move the case forward.
10:11:48 3                So what I would ask the parties to do is get
10:11:50 4   together and draft a stipulation to amend the scheduling
10:11:53 5   order as I have stated. I would like you to include the
10:11:56 6   three stages of limiting claims and references, and I would
10:11:59 7   like you to agree on language noting that we can revisit the
10:12:02 8   issue if a showing of good cause or a specific due process
10:12:07 9   concern is raised. And I would like you to submit that to
10:12:09 10  me by the end of next week.
10:12:12 11               Are there any questions?
10:12:15 12               MS. DURIE: Not for Intuitive. Thank you, Your
10:12:18 13  Honor.
10:12:18 14               MS. FARNAN: Not for Auris, Your Honor. Thank
10:12:21 15  you.
10:12:21 16               THE COURT: Thank you very much.
         17               (Teleconference ended at 10:12 a.m.)
         18
         19
         20
         21
         22
         23
         24
         25