IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTUITIVE SURGICAL, INC. and INTUITIVE SURGICAL OPERATIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AURIS HEALTH, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 18-1359 (MN) |

**MEMORANDUM OPINION**

John W. Shaw, Karen E. Keller, David M. Fry, SHAW KELLER LLP, Wilmington, DE; Daralyn J. Durie, Sonal N. Mehta, Laura E. Miller, Vera Ranieri, Eneda Hoxha, DURIE TANGRI LLP, San Francisco, CA – Attorneys for Plaintiffs

Kelly E. Farnan, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Arturo J. González, Michael A. Jacobs, Stefani E. Shanberg, Nathan B. Sabri, Robin L. Brewer, Sabrina Larson, MORRISON & FOERSTER LLP, San Francisco, CA; Bryan Wilson, MORRISON & FOERSTER LLP, Palo Alto, CA – Attorneys for Defendant

May 31, 2019
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is the motion (D.I. 14) of Defendant Auris Health, Inc. ("Defendant" or "Auris"), pursuant to 28 U.S.C. § 1404(a), to transfer this case to the Northern District of California. (*Id.*). Plaintiffs Intuitive Surgical, Inc. and Intuitive Surgical Operations, Inc. (collectively, "Plaintiffs" or "Intuitive") oppose transfer. (D.I. 26). For the reasons set forth below, Auris's motion to transfer is denied.

## I. BACKGROUND

The two Plaintiffs and Auris are Delaware corporations with principal places of business in California. (D.I. 1 ¶¶ 11-13). Intuitive initiated this action on August 31, 2018, alleging that Auris's Monarch Platform infringes eight of its patents. (*Id.* ¶ 23). The Monarch Platform is a robotic endoscope that can perform medical procedures within the lungs, "which can facilitate early detection and treatment of lung cancer." (D.I. 18 ¶ 2). Auris moves to transfer this action to the Northern District of California where all parties are headquartered and where, it asserts, its Monarch Platform was primarily designed and developed. (D.I. 17 ¶¶ 3, 5).

## II. LEGAL STANDARD

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, "[a] plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses," *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)), and this choice "should not be lightly disturbed," *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

The Third Circuit has recognized that:

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Jumara*, 55 F.3d at 879 (citation omitted). The *Jumara* court went on to describe twelve (12) "private and public interests protected by the language of § 1404(a)." *Id.* The private interests include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citations omitted). The public interests include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Moreover, though courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer," *Jumara*, 55 F.3d at 883, the Third Circuit has held that "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

## III. ANALYSIS

As an initial matter, the parties do not dispute that this action could have originally been brought in the Northern District of California. (*See* D.I. 15 at 6-7; D.I. 26 at 2 n.1). Thus, the only issue before the Court is whether to exercise discretion under § 1404(a) to transfer the case to that district.

### 1. Plaintiffs' forum preference

This factor weighs against transfer. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request," – one that "should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal quotations and citation omitted). "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer." *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975).

Although Auris acknowledges that Intuitive's choice is "entitled to some weight," it asserts that Intuitive's choice is "based on the parties' state of incorporation" and is "not dispositive of the transfer inquiry." (D.I. 15 at 16). In response, Intuitive contends that its choice of forum is "entitled to paramount consideration." (D.I. 26 at 9 (internal quotation marks omitted)). The Court acknowledges that Intuitive's choice is not "dispositive," but does "not discount Plaintiff[s'] choice of forum based on a lack of physical ties to Delaware." *Abraxis Bioscience, LLC v. HBT Labs, Inc.*, No. 18-2019 (RGA), 2019 WL 2270440, at *2 (D. Del. May 28, 2019). As the *Abraxis* court found, "Plaintiff incorporated in Delaware and chose to avail itself of that venue; physical ties are more appropriately considered under later factors. Moreover, *Shutte* recognizes that the plaintiff's choice of forum should be the 'paramount consideration' in the § 1404(a) analysis." *Id.*

(citing *Shutte*, 431 F.2d at 25). Intuitive's choice of forum is also entitled to paramount consideration.

### 2. Defendant's forum preference

This factor favors transfer. Auris's interest in having this case transferred to the Northern District of California is clear.

### 3. Whether the claims arose elsewhere

This factor is neutral. Auris contends that this factor weighs in favor of transfer because the majority of the design and development for the Monarch Platform took place in Auris's Redwood City offices. (D.I. 15 at 8 (citing D.I. 17 ¶ 5)). This fact weighs in favor of transfer. *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009); *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012) ("[T]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." (quotation marks and citation omitted) (alterations in original)). Monarch's robotic arms, however, "were developed in coordination with a company located in Canada." (D.I. 17 ¶ 5). Thus, it could be said that the claims also arose in Canada. Moreover, patent claims arise wherever alleged infringement has occurred. *Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706, 710 (D. Del. 2016) (citing 35 U.S.C. § 271(a); *Red Wing Show Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)). Although Auris has not made any sales in Delaware (D.I. 18 ¶ 3), it has made sales outside of California (D.I. 28, Exs. 6, 7). Therefore, this factor is neutral.

### 4. Convenience of the parties as indicated by their relative physical and financial condition

This factor is neutral. Determining convenience of the parties requires the Court to consider: (1) the parties' physical location; (2) the associated logistical and operational costs to the

4

parties in traveling to Delaware – as opposed to the proposed transferee district – for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal. *See MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017) (citing *Memory Integrity, LLC v. Intel Corp.*, No. 13-1804 (GMS), 2015 WL 632026, at *4 (D. Del. Feb. 13, 2015) (internal quotations omitted)). Because Auris is a Delaware corporation, it "must prove that litigating in Delaware would impose a unique or unusual burden on [its] operations." *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 325 (D. Del. 2013) (alteration in original) (internal quotation marks and citation omitted); *see also Universal Secure Registry, LLC v. Apple, Inc.*, No. 17-585 (CFC) (SRF), 2018 WL 4502062, at *3 (D. Del. Sept. 19, 2018) ("When a party accept[s] the benefits of incorporation under the laws of the State of Delaware, a company should not be successful in arguing that litigation in Delaware is inconvenient, absent some showing of a unique or unexpected burden." (internal quotation marks and citation omitted) (alteration in original)).

Here, Auris argues that keeping this case in Delaware "would divert financial and human resources from continued development of [its] Monarch Platform and, in particular, have a significant impact on the engineers responsible for overseeing the product." (D.I. 15 at 11). Moreover, as compared to Intuitive, Auris contends that it "pales in size and financial means" and that "[l]itigating in the District of Delaware would have a disproportionate impact on [it]." (*Id.*). Although the Court recognizes that Auris may be smaller than Intuitive,[1] the Court is not convinced that Auris will suffer a unique or unusual burden from litigating the case in this Court. The

---

[1] Since the completion of the parties' briefing on Auris's motion, Auris was acquired by Ethicon, Inc., a wholly owned subsidiary of Johnson & Johnson. (D.I. 63). The Court is unable to determine the size of Auris post-acquisition but will treat it as being smaller than Intuitive for purposes of this motion.

majority of discovery will likely occur in California or in another place agreed upon by the parties. *See Graphics Props. Holdings*, 964 F. Supp. 2d at 328. Moreover, "any additional inconvenience to [Auris's] employee witnesses in traveling to Delaware for pre-trial or trial proceedings is diminished by the fact that the amount of such travel is not likely to be large – particularly if the case (as most do) resolves prior to trial." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, No. 15-1168 (LPS) (CJB), 2016 WL 8677211, at *7 (D. Del. Sept. 23, 2016).

As for Intuitive, the Northern District of California and this District appear equally convenient. Intuitive, however, "has chosen to litigate this matter in Delaware and that choice signals its belief that litigation here is most convenient for it, for whatever its reasons." *Tessera, Inc. v. Sony Elecs., Inc.*, No. 10-838 (RMB) (KW), 2012 WL 1107706, at *4 (D. Del. Mar. 30, 2012). Thus, this factor is neutral.

5. Convenience of the witnesses

This factor slightly favors transfer. This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also VLSI*, 2018 WL 5342650, at *7 (citing *Smart Audio*, 910 F. Supp. 2d at 732 (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena")). "[W]itnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). "[T]he Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses[] who have no direct connection to the litigation." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. 2012), *mandamus denied sub nom. In re Altera Corp.*, 494 F. App'x 52 (Fed. Cir. 2012).

6

The parties agree that this factor weighs in favor of transfer, but disagree on the weight it should be afforded. Auris argues that this factor "weighs significantly in favor" because almost all of the relevant witnesses are in the Northern District of California and none are located within the subpoena power of the District of Delaware. (D.I. 15 at 12). In response, Intuitive argues that "Auris has not provided any indication that any of these witnesses would actually refuse to testify in Delaware absent a subpoena," but concedes that this factor "weighs at most slightly in favor of transfer." (D.I. 26 at 13-14).

With respect to the inventors, 19 out of 21 inventors of the patents-in-suit are based within the Northern District of California. (D.I. 16 ¶ 9). The other two inventors are in China and Italy, and, thus, are outside the subpoena power of both districts. (*Id.*). Of the 19 inventors within the Northern District of California's subpoena power, nine are employed by Intuitive, two are employed by Auris, and eight are employed by a third-party. (*Id.*). Intuitive has submitted declarations from the nine inventors within its employ, in which the inventors attest they would attend trial in Delaware, "absent some unexpected circumstance rendering travel infeasible." (D.I. 29, Tabs 1-9). As for the other inventors, however, Auris does not assert that "anyone from or on behalf of [Auris] has ever discussed with the witnesses whether they would be willing to testify at trial – in California or Delaware." *GE Healthcare Bio-Sciences AB v. Bio-Rad Labs., Inc.*, No. 18-1899 (CFC), 2019 WL 1985183, at *6 (D. Del. May 6, 2019).

With respect to prosecution counsel for the patents-in-suit, Auris identifies 11 individuals. (D.I. 16 ¶ 10). Six are located within the Northern District of California, while the other five are located outside the subpoena power of both districts. (*Id.*). Auris offers no evidence that any of these individuals would not be willing to testify at trial or that the individuals located within the

Northern District of California would be any more necessary as witnesses than the individuals located outside of either court's subpoena power.

With respect to the parties' own employees, Auris contends that "if either Auris or Intuitive wanted to compel the other party's employees to appear at trial, Rule 45 would not allow them to do so absent transfer." (D.I. 15 at 13). Neither party, however, identifies any possible employee witnesses of the other party, besides the party inventors, that it expects would be a necessary witness. Therefore, the Court is unable to determine whether these other unidentified party employees would "actually be unavailable for trial." *Jumara*, 55 F.3d at 879; *see also ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 570-71 (D. Del. 2001) ("Rather than starting with a presumption that witnesses may not appear and concluding the case should be transferred based on that assumption, it may make more sense to look at the facts and circumstances of each witness to see whether a subpoena is necessary.").

Nevertheless, although there is no record evidence that any of these possible witnesses would not be willing to testify at trial, the Court finds there is some merit in Auris's assertion that the "2,900 mile travel barrier between California and Delaware allows for the Court to infer that one or more witnesses may 'actually' be unavailable for trial in Delaware." (D.I. 15 at 14 (citing *Blackbird Tech LLC v. Cloudflare, Inc.*, No. 17-283 (MSG), 2017 WL 4543783, at *8 (D. Del. Oct. 11, 2017))). Therefore, because most of the relevant witnesses are in the Northern District of California and no witnesses have been identified in Delaware, this factor weighs in favor of transfer, but only slightly.

      6.      <u>Location of books and records</u>

This factor slightly favors transfer. *Jumara* instructs the Court to give weight to the location of books and records necessary to the case only "to the extent that the files [and other

8

evidence] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Auris argues that it "maintains all relevant books and records at its facilities in the Northern District of California." (D.I. 15 at 15). Auris also asserts that it "would be difficult and burdensome to transport" its Monarch Platform to Delaware for trial, given that the "Monarch Tower stands 5.5 feet tall and weighs 892 pounds" and the "Monarch Cart stands 3.3 feet tall and weighs 785 pounds." (*Id.* at 15-16). Although Auris does not assert that any evidence could not be produced in this district, the Court finds that there could be logistical burdens in transporting the Monarch Platform to Delaware because of its size. Therefore, this factor weighs in favor of transfer, but only slightly.

### 7. Enforceability of the judgment

This factor is neutral, as judgments from this district and the Northern District of California would be equally enforceable.

### 8. Practical considerations

This factor is neutral. The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Auris argues that this factor weighs in favor of transfer because "the parties' headquarters and the relevant witnesses and sources of evidence are all located in the Northern District of California" and California "is also far more convenient for both parties." (D.I. 15 at 18). In response, Intuitive contends that Auris's argument is repetitive of its arguments for other factors and "these considerations should not be 'double-counted.'" (D.I. 26 at 16 (internal quotation marks omitted)). The Court agrees with Intuitive. Auris's contentions "have been raised, in the same way, as to other *Jumara* factors, and so the Court will not 'double-count' them here." *Elm 3DS Innovations LLC v. SK Hynix, Inc.*, No. 14-1432 (LPS) (CJB), 2015 WL 4967139, at *11 (D. Del. Aug. 20, 2015). Therefore, given

9

that there is no broader public benefit to this case proceeding in this Court versus the Northern District of California, this factor is neutral. *W.R. Berkley Corp. v. Niemela*, No. 17-32 (GMS), 2017 WL 4081871, at *4 (D. Del. Sept. 15, 2017) (finding factor to be neutral when "neither party addresse[d] the broader public costs of proceeding in one district or the other").

9. <u>Relative administrative difficulty due to court congestion</u>

This factor is neutral. The Court takes judicial notice of the most recent Judicial Caseload Profiles,[2] as of December 31, 2018, which indicate that, in the District of Delaware, the median length of time between filing and trial for civil cases is 28.7 months and the median length of time between filing and disposition in civil cases is 5.5 months. In the Northern District of California, the median lengths of time in civil cases between filing and trial and filing and disposition are 29.2 months and 7.6 months, respectively. The December 31, 2018 profile also indicates that there are 596 cases pending per judgeship in the District of Delaware, whereas there are 739 cases pending per judgeship in the Northern District of California. These statistics counsel the Court that the two districts are similarly congested, and thus, this factor is neutral.

10. <u>Local interest in deciding local controversies at home</u>

This factor is neutral. Auris argues that that Northern District of California has a stronger interest than the District of Delaware because the parties are headquartered there and "the outcome of this lawsuit will affect the jobs and livelihood of the parties' employees there." (D.I. 15 at 19). In response, Intuitive argues that Delaware has a "strong interest in settling disputes between Delaware corporations" and that this factor "is at most neutral." (D.I. 26 at 17). The Court agrees with Intuitive. Although both parties physically reside in the Northern District of California, they

---

[2] The December 2018 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2018.pdf.

are incorporated in Delaware. Delaware has a substantial interest in adjudicating disputes between Delaware corporations, and its interest "must be accorded at least equal weight to those of the Northern District of California." *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 486 (D. Del. 2011). Moreover, "patent issues do not give rise to a local controversy or implicate local interests." *Id.* at 486 (quoting *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008)) (internal quotation marks omitted). Thus, this factor is neutral.

### 11. Public policies of the fora

Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts. *Round Rock Research, LLC v. Dell, Inc.*, 904 F. Supp. 2d 374, 378 (D. Del. 2012). Auris has not identified any countervailing policy of California. Thus, this factor weighs against transfer.

### 12. Familiarity of the trial judge with the applicable state law in diversity cases

Intuitive's claims arise under federal patent laws. Therefore, the familiarity of the respective districts with state law is not applicable and this factor is neutral.

### 13. Balancing the private and public factors

A balancing of the twelve *Jumara* factors advises the Court that this case should not be transferred to the Northern District of California. Seven factors are neutral, two factors weigh against transfer, and three factors weigh in favor of transfer. Looking at the factors as a whole and treating Intuitive's choice of this forum as a paramount consideration, Auris has failed to meet its heavy burden of showing that the *Jumara* factors weigh strongly in favor of transfer.

11

## IV. **CONCLUSION**

For the foregoing reasons, the Court denies Auris's motion to transfer the case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). An appropriate order will issue.