13:12:40

```
                IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF DELAWARE


INTUITIVE SURGICAL, INC.,    )
et al.,                      )
                             )
          Plaintiffs,        )
                             ) C.A. No. 18-1359(MN)
v.                           )
                             )
AURIS HEALTH, INC.,          )
                             )
          Defendant.         )


                    Wednesday, September 30, 2020
                    1:00 p.m.
                    Teleconference


                    844 King Street
                    Wilmington, Delaware



BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge



APPEARANCES:


          SHAW KELLER LLP
          BY:  KAREN KELLER, ESQ.

          -and-

          DURIE TANGRI LLP
          BY:  DARALYN J. DURIE, ESQ.
          BY:  CHRISTOPHER ROTH, ESQ.

                         Counsel for the Plaintiffs
```

```
 1    APPEARANCES CONTINUED:

 2


 3
               RICHARDS LAYTON & FINGER, P.A.
 4             BY:   KELLY FARNAN, ESQ.

 5             -and-

 6             DESMARAIS LLP
               BY:   JOHN M. DESMARAIS, ESQ.
 7             BY:   PAUL A. BONDOR, ESQ.
               BY:   COSMIN MAIER, ESQ.
 8             BY:   JAMIE L. KRINGSTEIN, ESQ.

 9                     Counsel for the Defendant

10

11                    - - - - - - - - - -

12

13

14             THE COURT:  Good afternoon, counsel.  Who is

15    there, please?

16             MS. KELLER:  Good afternoon, Your Honor.  Karen

17    Keller from Shaw Keller for Intuitive.  And with me today is

18    Daralyn Durie from Durie Tangri.  And I think Frank Costa is

19    on the phone.  There may be some other folks as well, but I

20    don't want to spend the Court's time going through the whole

21    list.

22             MS. DURIE:  Good afternoon, Your Honor.

23             THE COURT:  Good afternoon to all of you.

24             MS. FARNAN:  Good afternoon, Your Honor.  It's

25    Kelly Farnan from Richards, Layton & Finger on behalf of the
```

```
13:02:28   1    Defendant.  And I'm joined by my co-counsel from Desmarais
13:02:32   2    LLP, John Desmarais, Paul Bondor, Cosmin Maier and Jamie
13:02:38   3    Kringstein.
13:02:38   4              THE COURT:  Good afternoon to all of you as
13:02:40   5    well.
13:02:41   6              So we received the stipulation regarding the
13:02:44   7    briefing on the pending dispositive motions or maybe the
13:02:50   8    Daubert motions, I can't remember, but I understand there
13:02:54   9    was also then a call that was made to chambers asking for
13:03:00  10    this call that we have to discuss a trial date.  So can
13:03:06  11    someone fill me in on where we are with all of that.
13:03:10  12              MS. DURIE:  Yes, Your Honor, this is Daralyn
13:03:14  13    Durie from Durie Tangri for Intuitive.  We have looked at
13:03:16  14    the currently scheduled January 11th trial date and we were
13:03:19  15    concerned that in view of the COVID situation proceeding
13:03:24  16    with the jury trial on that date might be unrealistic.  I
13:03:29  17    had reached out to Mr. Desmarais and discussed the situation
13:03:33  18    with him and I think we were generally in agreement that
13:03:36  19    that date seemed unrealistic in view of the current
13:03:41  20    situation, and that we wanted to inquire with the Court
13:03:44  21    about the Court's views and whether it might make sense to
13:03:48  22    reschedule the trial and to pick another date not too far
13:03:52  23    out, but one that might be more realistic for a jury trial.
13:03:58  24              THE COURT:  Okay.  And tell me where we are in
13:04:01  25    this case, because if we really -- if you really think I
```

need to hold ten days, that's going to change my assessment of where we are. So at some point there were eight patents and then I thought during the briefing on the stay there was some suggestion that we were down to six, a number of which are subject to IPR. But how many patents are we currently talking about?

MS. DURIE: That's correct, Your Honor, I think we are down to six and we've made -- we've got a further claim election. I think as a practical matter when we get to trial, even to the extent that there are more patents that are formally in the mix, our expectation is that we're going to be picking a limited set of claims to try. So I think from the Plaintiff's perspective and sort of recognizing the unusual situation that we're in, if we had a week in which to try the case, we would make that work.

THE COURT: All right. And where does -- tell me what Defendant's position is on these issues.

MR. DESMARAIS: Yes, Your Honor. This is John Desmarais for Auris. Thank you.

Daralyn Durie as she said reached out to me and ask me if we would agree to move the trial date. And I said as long as we keep the briefing schedule so that we finish all the motions, the Daubert motions and summary judgment motions and sort of everything done that we would be amenable to moving the trial date.

13:05:46  1                    I think Your Honor may remember I argued a stay
13:05:49  2      motion a while back arguing that some IPR's are going to be
13:05:54  3      decided right around the time of the trial in January,
13:05:56  4      February and March, and we believe at least some of the
13:05:59  5      patents will go away as a result of that.  We also believe
13:06:03  6      some of the patents will go away we hope as part of our
13:06:06  7      summary judgment process which is now briefed.  So it makes
13:06:11  8      great sense to delay the trial because I think for exactly
13:06:15  9      the reason that we're talking about, there is currently six
13:06:18 10      patents, in my view there is not likely to be six when we
13:06:22 11      get through the IPR's and summary judgment so there will be
13:06:26 12      something less than that, so I think for judicial efficiency
13:06:30 13      point of view it makes a heck of a lot of sense to bump the
13:06:33 14      trial so we can get through the IPR and through the summary
13:06:37 15      judgment briefing.  And for the reasons Ms. Durie talked
13:06:40 16      about with respect to COVID, that's another reason it makes
13:06:43 17      sense.
13:06:43 18                    If Your Honor is amenable, we would be amenable
13:06:46 19      to picking a date later in the year when we think COVID will
13:06:50 20      be enough behind us that we can have a real jury trial and
13:06:53 21      by then we'll know how many patents are actually left and we
13:06:56 22      can probably do the trial in a week at that point.
13:06:58 23                    THE COURT:  And the last of the IPR's as I
13:07:02 24      recall, and this could be wrong, all of the IPR's should
13:07:10 25      have a final written decision by sometime in March of 2021.

```
13:07:16  1    Is that right?
13:07:17  2              MR. DESMARAIS:  I think that's right.  And
13:07:19  3    Cosmin Maier from my team is on the line, too, but I think
13:07:23  4    that's right, Your Honor.
13:07:26  5              MR. MAIER:  Correct, March 4th.
13:07:28  6              THE COURT:  Okay.  It's impossible to predict
13:07:32  7    what is going to happen with jury trials, but given where we
13:07:40  8    are now do I think that January may be optimistic?  Yes,
13:07:48  9    especially given that we have to -- you know, we're trying
13:07:55 10    to schedule trials here where we would only had have at most
13:07:59 11    one jury trial going on and civil trials would have to take
13:08:02 12    a back seat to criminal trials.
13:08:06 13              That being said, in looking at the time frame,
13:08:14 14    later in the year is worse for me than earlier in the year
13:08:20 15    because we've already triple booked most of the time in the
13:08:27 16    second half of the year.  And I'm not prepared right now to
13:08:34 17    quadruple book it.
13:08:36 18              So I understand that Defendant has some
13:08:39 19    conflicts in April and May and prefers a date around
13:08:43 20    September.  I can't do September.  I can't do after
13:08:47 21    September.  I can't do August.  So that's all off the table
13:08:51 22    if you really want to reschedule.  But tell me what's going
13:08:56 23    on in April and May.
13:08:59 24              MR. DESMARAIS:  So, Your Honor, I would -- this
13:09:02 25    is John Desmarais again.
```

13:09:04  1              I have a trial in Texas on May 3rd.  And I have
13:09:09  2  a very large trial, assuming it goes, with Judge Connolly on
13:09:15  3  March 8th.  So could I suggest June?  I don't know what the
13:09:21  4  Court's schedule is in June.  That would give me time to get
13:09:24  5  through my May trial, or even July, June and July are open
13:09:29  6  for me.
13:09:30  7              THE COURT:  We also run into problems with clerk
13:09:33  8  change over and things like that, so July --
13:09:41  9              MS. DURIE:  If I may, Your Honor, Daralyn Durie.
13:09:44 10  My schedule will -- I have a jury trial in the Northern
13:09:50 11  District of California on April 6th and a trial in front of
13:09:53 12  Judge Connolly on June 14th.  So I think we're going to have
13:09:57 13  to slide something in there in a way that's going to be
13:10:01 14  probably a little bit tighter than comfortable, but
13:10:05 15  recognizing that not everything will probably happen.
13:10:10 16              THE COURT:  Okay.  I completely have lost track
13:10:14 17  of when you all are out.  So I guess what I'm going to have
13:10:21 18  to do is, and I don't have any staff here to help me with
13:10:29 19  the calendar.  What I'm going to do is I'm going to tell you
13:10:32 20  dates when we could do it and you guys are going to have to
13:10:36 21  agree to one of those dates or we're going to keep you on
13:10:39 22  the calendar for January, and if that gets kicked because we
13:10:42 23  can't manage to do it as the time gets closer, then you'll
13:10:50 24  just have to get pushed off to whenever we can possibly do
13:10:55 25  it, which may not be next year.

```
13:10:57  1              So we could do the week of April 26th or
13:11:10  2    May 3rd.  We could do the week of June 21st.
13:11:29  3              MS. DURIE:  My --
13:11:30  4              THE COURT:  Wait.  Wait.  Wait.  And I don't
13:11:33  5    want you guys to sit here and negotiate your schedules with
13:11:35  6    me.  You can do that between yourselves.  But hold on.  Let
13:11:40  7    me see if there are other dates that I can give you.
13:11:47  8              So I think I said April 26th, May 3rd, and
13:11:54  9    June 21st.  I could probably do the end of the week of
13:12:13 10    May 17th into the following week of May 23rd, you would be
13:12:20 11    second on the calendar.  And I might be able to do the week
13:12:34 12    after Memorial Day.  That's I think where we are.  And the
13:12:49 13    June 21st date that I gave you, you would also be second in
13:13:00 14    line.
13:13:00 15              MR. DESMARAIS:  Your Honor, when you say the
13:13:02 16    week after Memorial Day, you're talking about the week of
13:13:06 17    June 7th?
13:13:08 18              THE COURT:  No.  I apologize.  I meant the four
13:13:11 19    days after Memorial Day.
13:13:13 20              MR. DESMARAIS:  I see, June 1st, got it.
13:13:15 21              THE COURT:  June 1st.  So actually I could do
13:13:18 22    June 7th probably.  We would have to move some things
13:13:23 23    around, but I could probably make that work.
13:13:30 24              MR. DESMARAIS:  Okay.  Thank you.
13:13:32 25              THE COURT:  All right.  So those are the times
```

| | | |
|---|---|---|
| 13:13:35 | 1 | that I can do it.  I can reschedule.  If not, as I said, I |
| 13:13:41 | 2 | guess we'll have to just keep it where it is.  But I do |
| 13:13:44 | 3 | agree with it sounds like what the parties have already |
| 13:13:49 | 4 | agreed to and that is not pushing out the current motion |
| 13:13:55 | 5 | responses or replies, I don't know what the stage is, any |
| 13:13:59 | 6 | further than what you guys have already agreed to do.  I |
| 13:14:02 | 7 | want to get those motions in so that we have time to look at |
| 13:14:07 | 8 | them. |
| 13:14:12 | 9 | Is there anything else we should be discussing |
| 13:14:16 | 10 | while we're on the phone? |
| 13:14:18 | 11 | MS. DURIE:  Not from the Plaintiff's |
| 13:14:20 | 12 | perspective, Your Honor. |
| 13:14:22 | 13 | MR. DESMARAIS:  Not from the Defendant's |
| 13:14:24 | 14 | perspective either, Your Honor.  Thank you. |
| 13:14:25 | 15 | THE COURT:  Thank you.  So what I'll ask you to |
| 13:14:27 | 16 | do is to talk about the dates that I offered, see if there |
| 13:14:32 | 17 | is something that you can agree to, and then let my judicial |
| 13:14:37 | 18 | administrative, Diana Welham, know in a call or an e-mail if |
| 13:14:45 | 19 | you have agreed to something and she and I can talk and |
| 13:14:48 | 20 | we'll see if we can get things to work. |
| 13:14:51 | 21 | And with that, I will say thanks for getting on |
| 13:14:52 | 22 | the phone with me on short notice and I hope everyone has a |
| 13:14:58 | 23 | good rest of the day. |
| | 24 | (Teleconference concluded at 1:14 p.m.) |
| | 25 | |

1               I hereby certify the foregoing is a true and
     accurate transcript from my stenographic notes in the proceeding.
2

3                                         /s/ Dale C. Hawkins
                                         Official Court Reporter
4                                          U.S. District Court