# EXHIBIT A

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/014,912 | 11/29/2021 | 9452276 | 14998.0003-00000 | 7506 |

184463          7590          06/29/2023
Finnegan/Intuitive Surgical, Inc.
901 New York Avenue, NW
Washington, DC 20001

| EXAMINER |
|---|
| FLANAGAN, BEVERLY MEINDL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/29/2023 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Thomas A. Broughan III
Sidley Austin LLP
1501 K Street, NW
Washington, DC 20005

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/014,912* .

PATENT UNDER REEXAMINATION *9452276* .

ART UNIT *3993* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| | Control No. | Patent Under Reexamination |
|---|---|---|
| **Office Action in Ex Parte Reexamination** | 90/014,912 | 9452276 |
| | Examiner<br>BEVERLY M FLANAGAN | Art Unit<br>3993 | AIA (FITF) Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☑ Responsive to the communication(s) filed on 02 May 2023.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☐ This action is made FINAL.

c. ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire 2 month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**
1. ☑ Notice of References Cited by Examiner, PTO-892.          3. ☐ Interview Summary, PTO-474.
2. ☑ Information Disclosure Statement, PTO/SB/08.              4. ☐ _____.

**Part II   SUMMARY OF ACTION**
1a. ☑ Claims 1,4,9-10,12 and 14 are subject to reexamination.
1b. ☑ Claims 2-3,5-8,11,13 and 15-22 are not subject to reexamination.
2.  ☐ Claims _____ have been canceled in the present reexamination proceeding.
3.  ☐ Claims _____ are patentable and/or confirmed.
4.  ☑ Claims 1,4,9-10,12 and 14 are rejected.
5.  ☐ Claims _____ are objected to.
6.  ☐ The drawings, filed on _____ are acceptable.
7.  ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.
8.  ☐ Acknowledgment is made of the priority claim under 35 U.S.C. 119(a)-(d) or (f).
    a) ☐ All  b) ☐ Some*  c) ☐ None   of the certified copies have
    1 ☐ been received.
    2 ☐ not been received.
    3 ☐ been filed in Application No. _____.
    4 ☐ been filed in reexamination Control No. _____.
    5 ☐ been received by the International Bureau in PCT application No. _____.
    * See the attached detailed Office action for a list of the certified copies not received.

9.  ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

Application/Control Number: 90/014,912   Page 2
Art Unit: 3993

## DETAILED ACTION

### *Reexamination Procedures*

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 C.F.R. 1.116, after final rejection and 37 C.F.R. 41.33 after appeal, which will be strictly enforced.

Extensions of time under 37 C.F.R. 1.136(a) will not be permitted in these proceedings because the provisions of 37 C.F.R. 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. § 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 C.F.R. 1.550(a)). Extension of time in *ex parte* reexamination proceedings are provided for in 37 C.F.R. 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 C.F.R. 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 9,452,276 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability of similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 C.F.R. 1.530(d)-(j), must

be formally presented pursuant to 37 C.F.R. 1.52(a) and (b), and must contain any fees required by 37 C.F.R. 1.20(c).

After the filing of a request for reexamination by a third party requester, any document filed by either the patent owner or the third party requested must be served on the other party (or parties where two or more third party requested proceedings are merged) in the reexamination proceeding in the manner provided in 37 C.F.R. 1.248. See 37 C.F.R. 1.550(f).

### *Examiner's SNQ*

The presence or absence of a "substantial new question of patentability" (SNQ) determines whether or not reexamination is ordered.

For an SNQ to be present, it is only necessary that:

A) the prior art patents and printed publications raise a substantial new question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable; and

B) the same question of patentability as to the claim has not been decided by the Office in a previous examination of the patent or in a final holding of invalidity by the Federal Courts in a decision on the merits involving the claim.

A SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation in the request (MPEP 2242).

The SNQ is based on: Galel, U.S. Patent No. 5,492,131.

Galel teaches a catheter 11 having a distal end 12 that is detected by a sensor 13 that transmits data 14 representing the position of the catheter tip to a CPU 15 (see Fig. 1). The CPU 15 then transmits a representative signal to the motion control system 18 which generates and transmits a motion command 19 that is received by a steering system comprised of two servo motors 22,23 (see Fig. 1 and col. 4, line 60 to col. 5, line 2). The servo motors cause the distal end 12 to bend in any of four orthogonal directions 24, 25, 26, 27 for steering purposes as well as intermediate directions by combined vectors of adjacent orthogonal directions (see col. 5, lines 4-8). Galel also provides for correction of position error 17 (see col. 4, lines 60-67).

Galel was not cited during the examination of the '208 application.

Furthermore, a reasonable examiner would consider the teachings of these references to be important in deciding whether or not the claims in this reexamination proceeding are patentable.

### *Previously Set Forth Rejections*

The following rejections set forth in the previous Office action mailed March 2, 2023 are hereby **withdrawn**:

The pre-AIA 35 U.S.C. 103(a) rejection of claims 1, 4, 9, 10, 12 and 14 as being unpatentable over Tolkowsky (PCT Publication No. WO 2008/111070) in view of Gersak (PCT Publication No. WO 2009/148317);

The pre-AIA 35 U.S.C. 103(a) rejection of claims 1, 4, 9, 10, 12 and 14 as being unpatentable over Tolkowsky (PCT Publication No. WO 2008/111070) in view of Hasegawa (U.S. Patent Application Publication No. 2009/0299136); and

The pre-AIA 35 U.S.C. 103(a) rejection of claims 4, 9 and 10 as being unpatentable over Tolkowsky (PCT Publication No. WO 2008/111070) in view of Gersak (PCT Publication No. WO 2009/148317) or Hasegawa (U.S. Patent Application Publication No. 2009/0299136) and further in view of Merril (U.S. Patent Application Publication No. 2006/0161045).

The following new grounds of rejection are set forth:

### *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The factual inquiries for establishing a background for determining obviousness under pre-AIA 35 U.S.C. 103(a) are summarized as follows:

Application/Control Number: 90/014,912                                                                  Page 6
Art Unit: 3993

    1. Determining the scope and contents of the prior art.

    2. Ascertaining the differences between the prior art and the claims at issue.

    3. Resolving the level of ordinary skill in the pertinent art.

    4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

    Claims 1, 4, 9, 10, 12 and 14 is/are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Tolkowsky (PCT Publication No. WO 2008/111070) in view of Gersak (PCT Publication No. WO 2009/148317), Hasegawa (U.S. Patent Application Publication No. 2009/0299136) and Galel (U.S. Patent No. 5,492,131).

    **In regard to claims 1, 4, 9, 10, 12 and 14**, Tolkowsky teaches a sheath 1 with a main sheath body 2 and a main inner channel 5 (see Figs. 2 and 3A-3C). Main inner channel 5 is used for insertion of a tool 4 (see page 50, lines 8-20). The tool 4 may comprise an endoluminal imaging device that is navigated together with the sheath 1 to a desired location (see page 59, lines 14-16). Tolkowsky teaches that the imaging probe captures images as the sheath is navigated to the desired location and a display can show the intra-operative endoluminal images as recorded (see page 59, lines 21-28). The main sheath body 2 includes additional channels 6 that are used for insertion and placement of one or more location sensors 18 (see Fig. 3B and page 50, lines 8-10). Tolkowsky considers the "location" to be defined as including X, Y and Z coordinates along with roll, pitch and yaw angles (see page 30, lines 14-20). A ring 8 is attached to the distal end of sheath 1 and steering wires 10 and 11 join sheath 1 at its proximal end and connect to distal ring 8 (see Figs. 3B and 3C and page 50, lines 28-29). Steering wires 10 and 11 control tilting of the distal section of sheath 1 in the up

and down directions (see page 50, lines 29-30). Additional steering wires 14 and 15 can be joined to sheath 1 at its proximal end and connect to distal ring 8 for controlling tilting of the distal section of sheath in the left and right directions (see Fig. 3B and page 51, lines 3-5). A steering actuator 20 is provided on the handle comprised of knob 21 that connects to wires 10 and 11 and knob 22 that connects to wires 14 and 15 (see Figs. 4-6 and page 52, lines 3-8). The knobs 21 and 22 may be locked and unlocked to fix or unfix a particular tilt (see page 52, lines 9-11). Tolkowsky also teaches that the actuator 20 can comprise a joystick 25 to which all steering wires are connected and which controls tilting in any of the available directions and can be locked to fix a certain tilt (see page 52, lines 19-23). Tolkowsky teaches that the sheath 1 may be maneuverable by a robot and/or may be maneuverable from a remote location (see page 37, lines 3-5). Tolkowsky also teaches a navigation system that includes a control unit that uses the signals from the location sensors to determine the position and orientation of the sheath's distal tip, and then display it on a screen (see page 30, lines 15-31. Page 23, lines 9-15, page 24, lines 15-19 and page 25, lines 19-21). However, Tolkowsky is silent as to a control system that is coupled to the mechanical system to control the catheter. Gersak teaches a catheter 1 with a position sensor 2 and software 14, 15 that manages the tracking data for the catheter 1 and controls a mechanical pump (see Fig. 12 and page 10, lines 5-12). The software 14, 15 is capable of receiving a data stream with data regarding the position of the sensor 2 in 3D space (tracking data) (see page 10, lines 13-18). The system can be operated automatically, attempting to place the distal end of the catheter 1 in the defined position (see page 11, lines 15-22). Gersak states that the tracking system provides 6 degrees of freedom – 3

values for position and 3 values for orientation (see page 21, lines 21-24). Gersak also teaches that there can be an automatic keep-in-place mechanism that will warn the use of any displacement of the catheter 1 and will try to compensate for it automatically (see page 7, lines 1-4). Gersak thus demonstrates that the art is well aware of the use of control systems coupled to a mechanical system of controlling a catheter. Hasegawa teaches an endoscopic shape observation apparatus 80 with at least one magnetic field generating coil 84 provided on the distal side of a curving portion 3b of an endoscopic main unit 3 (see Fig. 6 and para. 0060). The magnetic field generated by the coil 84 is detected by a plurality of magnetic field detection coils 86 provided in a magnetic field detection unit 83 (see para. 0061). Hasegawa teaches a plurality of operating wires 23 connected to the curving portion 3b, as well as pulleys 24 and motors 25 coupled to the wires 23 and drivers 26 for independently driving each of the motors 25 (see para. 0032). An encoder 27 is also provided in each of the motors 25 and a curving control unit 28 controls the driver 26 on the basis of a value detector by the encoder 27 (see para. 0032). A control unit 10 can calculate a movement (direction and distance) for return to an original position (treatment position) (see para. 0034). Hasegawa discloses a plurality of modes of operation (see pages 87-92 of the request). Hasegawa thus demonstrates that the art is well aware of the use of control systems coupled to a mechanical system of controlling a catheter. Galel teaches a catheter 11 having a distal end 12 that is detected by a sensor 13 that transmits data 14 representing the position of the catheter tip to a CPU 15 (see Fig. 1). The CPU 15 then transmits a representative signal to the motion control system 18 which generates and transmits a motion command 19 that is received by a steering system comprised of two servo

motors 22,23 (see Fig. 1 and col. 4, line 60 to col. 5, line 2).  The servo motors cause the distal end 12 to bend in any of four orthogonal directions 24, 25, 26, 27 for steering purposes as well as intermediate directions by combined vectors of adjacent orthogonal directions (see col. 5, lines 4-8). Galel also provides for correction of position error 17 (see col. 4, lines 60-67).   Hasegawa thus demonstrates that the art is well aware of the use of control systems coupled to a mechanical system of controlling a catheter.  Gersak, Hasegawa and Galel collectively demonstrate that the art was well aware of using a control system, control unit or CPU to control the mechanical movement system of a catheter (in the case of Galel, going back to 1994).  In addition, Furthermore, it is well settled that the replacement of a manual operation with an automatic operation is a design consideration within the skill of the art.  In re Venner, 262 F.2d 91, 120 USPQ 192 (CCPA 1955).  Given the teachings of Gersak, Hasegawa and Galel, it would have been obvious for one of ordinary skill in the art at the time the invention was made to provide the device of Tolkowsky with a control system attached to the mechanical movement system, to control the movement of the catheter, in the manner disclosed by Gerask, Hasegawa and Galel.  It would be advantageous to do so as computerized control of the catheter is clearly an art-recognized advantage as shown by Gersak, Hasegawa ad Galel.  Tolkowsky also teaches a method where a tool and an imaging device are alternately inserted in the main channel (see page 84, lines 5-14 and page 85, lines 4-13).

Claims 4, 9 and 10 is/are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Tolkowsky (PCT Publication No. WO 2008/111070) in view of Gersak

(PCT Publication No. WO 2009/148317), Hasegawa (U.S. Patent Application Publication No. 2009/0299136) and Galel (U.S. Patent No. 5,492,131) and further in view of Merril (U.S. Patent Application Publication No. 2006/0161045).

*In regard to claims 4, 9 and 10*, Merril teaches an endoscope 2 with a working channel through which a working channel tool 4 is inserted (see Fig. 1a). Motion sensor and control element 10 assist in the control of the working channel tool 4 (see para. 0020). Merril discloses different modes of operation, including when a preset limit, point or distance is approached by the distal end of the tool 4, control signals can be transmitted to an actuator 12 to produce torque necessary to slow and then halt further motion of motion sensing and control wheel 18, thereby slowing and halting further insertion of working channel tool 4 (see para. 0026). See also paras. 0027-0028 that describe other modes of operation. Merril thus demonstrates that multiple modes for a steerable endoscope are well known in the art, to increase the maneuverability and functioning of the endoscope. Since Tolkowsky in view of Gersak, Hasegawa and Galel teaches a control system for the mechanical movement system, it would have been obvious for one of ordinary skill in the art before the effective filing date of the claimed invention to include Merril's multiple modes as part of the programming for the control system.

### Response to Arguments

Patent owner's arguments filed May 2, 2023 have been fully considered but they are not persuasive. The examiner notes and has reviewed the Declaration of Mark E. Rentschler, filed May 2, 2023.

Patent owner argues that Tolkowsky is a manually operated device that requires knobs or pull levers to apply a force to physically lock the system into place and does not disclose a control system that holds or returns the distal tip of the catheter in a desired working configuration (see pages 4 and 10-12 of the 5/2/23 response). Patent owner argues that Tolkowsky, in disclosing robotic control, does not disclose robotic control to lock the probe in place (see pages 12-13 of the 5/2/23 response). Patent owner also argues that Gersak does not disclose an imaging device, let alone a removeable one (see pages 5 and 14 of the 5/2/23 response). Patent owner also argues that Gersak's software only compensates for positional (and not orientational) displacement and does not disclose a control system that holds the distal tip (see page 5 and 15-19 of the 5/2/23 response). Patent owner further argues that combining Tolkowsky and Gersak would require substantial redesign and reconstruction and change the principle of operation of the references (see pages 5 and 20-25 of the 5/2/23 response). Patent owner also argues that Hasegawa's imaging device is not removeable (see pages 5 and 25-27 of the 5/2/23 response). Patent owner also argues that the proposed combination of Tolkowsky and Hasegawa would require removing Hasegawa's imaging device thus requiring redesign and reconstruction (see pages 28-34 of the 5/2/23 response).

At the outset, it is noted that the "control system" recited in claim 1 is "operable to" perform a variety of functions (identify a desired working configuration, receive orientation information and hold or return the distal tip to the desired working configuration). As is noted in MPEP 2114:

> "[A]pparatus claims cover what a device *is*, not what a device *does*." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469, 15 USPQ2d 1525,

1528 (Fed. Cir. 1990) (emphasis in original). A claim containing a "**recitation with respect to the manner in which a claimed apparatus is intended to be employed does not differentiate the claimed apparatus from a prior art apparatus**" if the prior art apparatus teaches all the structural limitations of the claim. *Ex parte Masham*, 2 USPQ2d 1647 (Bd. Pat. App. & Inter. 1987) (The preamble of claim 1 recited that the apparatus was "for mixing flowing developer material" and the body of the claim recited "means for mixing ..., said mixing means being stationary and completely submerged in the developer material." The claim was rejected over a reference which taught all the structural limitations of the claim for the intended use of mixing flowing developer. However, the mixer was only partially submerged in the developer material. The Board held that the amount of submersion is immaterial to the structure of the mixer and thus the claim was properly rejected.)

Claim 1 is clearly defining what the control system "does."

As noted by patent owner, everyone is in agreement that Tolkowsky does not teach a control system to control the movement of the device. However, the art is replete with examples of the movement of a catheter being directed/controlled by a control system. Gersak, Hasegawa and Galal are but three examples of this. Tolkowsky does mention "robotic control" and this reference remains in the above rejection. But this sentence does not form the basis for the combination of references set forth above: The prior art references showing control of the movement of a catheter by a control unit do. As to the specifics of the movement (e.g., holding the position of the distal tip or returning (correcting) the distal tip to a desired position), these specifics are taught by Tolkowsky (hold the position) and Gerask and Galal (return/correct the position). It is also noted that the "hold" and "return" recitations are presented in the alternative (using the qualifier "or"). Patent owner is reminded that during examination, claims are to be given their broadest reasonable interpretation. As to patent owner's arguments that Gersak does not teach an imaging device and Hasegawa has an embedded imaging device, it is noted that neither Gersak nor Hasegawa are utilized are

teachings of a catheter with an imaging device. Tolkowsky clearly teaches an imaging device. One cannot show nonobviousness by attacking references individually where the rejections are based on combinations of references. See *In re Keller*, 642 F.2d 413, 208 USPQ 871 (CCPA 1981); *In re Merck & Co.*, 800 F.2d 1091, 231 USPQ 375 (Fed. Cir. 1986). In response to patent owner's arguments that combining Tolkowsky and Gersak or Tolkowsky and Hasegawa would require substantial redesign and reconstruction and change the principle of operation of the references, the test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference; nor is it that the claimed invention must be expressly suggested in any one or all of the references. Rather, the test is what the combined teachings of the references would have suggested to those of ordinary skill in the art. See *In re Keller*, 642 F.2d 413, 208 USPQ 871 (CCPA 1981).

### Scope of Reexamination

Since requester did not request reexamination of claims 2, 3, 5-8, 11, 13 and 15-22 and did not assert the existence of a substantial new question of patentability (SNQP) for such claims (see 35 U.S.C. § 311(b)(2); see also 37 CFR 1.915b and 1.923), such claims will not be reexamined. This matter was squarely addressed in *Sony Computer Entertainment America Inc., et al. v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22, 2006), Slip Copy, 2006 WL 1472462. (Not Reported in F.Supp.2d.) The District Court upheld the Office's discretion to not reexamine claims in an *inter partes* reexamination proceeding other than those claims for which reexamination had specifically been requested. The Court stated:

> To be sure, a party may seek, and the PTO may grant, *inter partes* review of each and every claim of a patent. Moreover, while the PTO in its discretion may review claims for which *inter partes* review was not requested, nothing in the statute compels it to do so. To ensure that the PTO considers a claim for *inter partes* review, § 311(b)(2) requires that the party seeking reexamination demonstrate why the PTO should reexamine each and every claim for which it seeks review. Here, it is undisputed that Sony did not seek review of every claim under the '213 and '333 patents. Accordingly, Sony cannot now claim that the PTO wrongly failed to reexamine claims for which Sony never requested review, and its argument that AIPA compels a contrary result is unpersuasive.

(Slip copy at page 9.)

The *Sony* decision's reasoning and statutory interpretation apply analogously to *ex parte* reexamination, as the same relevant statutory language applies to both *inter partes* and *ex parte* reexamination. 35 U.S.C. § 302 provides that the *ex parte* reexamination "request must set forth the pertinency and manner of applying cited prior art <u>to every claim for which reexamination is requested</u>" (emphasis added), and 35 U.S.C. § 303 provides that "the Director will determine whether a substantial new question of patentability affecting <u>any claim of the patent</u> concerned is <u>raised by the request</u>..." (Emphasis added). These provisions are analogous to the language of 35 U.S.C. § 311(b)(2) and 35 U.S.C. § 312 applied and construed in *Sony*, and would be construed in the same manner. As the Director can decline to reexamine non-requested claims in an *inter partes* reexamination proceeding, the Director can likewise do so in *ex parte* reexamination proceeding. See *Notice of Clarification of Office Policy To Exercise Discretion in Reexamining Fewer Than All the Patent Claims* (signed Oct. 5, 2006) 1311 OG 197 (Oct. 31, 2006). See also MPEP § 2240, Rev. 5, Aug. 2006.

Therefore, claims 2, 3, 5-8, 11, 13 and 15-22 were not be reexamined in this *ex parte* reexamination proceeding.

Please mail any communications to:

> Attn: Mail Stop "Ex Parte Reexam"
> Central Reexamination Unit
> Commissioner for Patents
> P.O. Box 1450
> Alexandria, VA  22313-1450

Please FAX any communications to:

> (571) 273-9900
> Central Reexamination Unit

Please hand-deliver any communications to:

> Customer Service Window
> Attn: Central Reexamination Unit
> Randolph Building, Lobby Level
> 401 Dulaney Street
> Alexandria, VA  22314

| | |
|---|---|
| Application/Control Number: 90/014,912 | Page 16 |
| Art Unit: 3993 | |

Any inquiry concerning this communication or earlier communications from the Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

/Beverly M. Flanagan/
Beverly M. Flanagan
CRU Examiner
GAU 3993
(571) 272-4766

Conferees:   /GKD/
Glenn K. Dawson
Patent Reexamination Specialist, Art Unit 3993

/GAS/
Gay Ann Spahn
Supervisory Patent Reexamination Specialist, Art Unit 3993